# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>  v.<br><br>MARSHALL E. MELTON and INTEGRATED CONSULTING & MANAGEMENT, INC.,<br><br>     Defendants. | Civil Action No. _____<br><br>JURY DEMAND |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

The U.S. Securities and Exchange Commission ("Plaintiff" or "Commission") alleges as follows:

## SUMMARY

1. Between approximately March 2016 through April 2021, Marshall E. Melton ("Melton") and his company, Integrated Consulting & Management, LLC ("Integrated Consulting"), fraudulently offered and sold to seven investors a total of between approximately $1.03 million and $1.49 million of interests in what Melton described as a real estate development venture in Laurinburg, North Carolina (hereafter, the "Laurinburg Project").

2. When they first invested, six of these investors ranged in age from almost 60 to just over 86, with an average age of 75.

3.      Although the form of the investments varied, Melton told each investor that he would use their funds to purchase properties in disrepair in downtown Laurinburg, renovate those properties for rental income and resale, and pay the investors a return from rental income and/or sale proceeds.

4.      Melton's representations were false.  While he used some investor funds to purchase seven properties in Laurinburg (the "Laurinburg properties"), he did little to renovate, develop, or commercially use them.  He never paid the investors their promised returns or returned to them their invested amounts.

5.       Instead, Melton misappropriated for his own use nearly two-thirds of the investors' funds.

6.      Later, in April 2021, to mollify two complaining investors, Melton transferred ownership of five of the Laurinburg properties to those investors in exchange for a mutual release.

7.       To facilitate this transfer, however, Melton fraudulently induced two other investors to relinquish their interests in those properties—misleadingly telling one that he would get her something better and misrepresenting to the other that he had a buyer for the property and could only make the sale if the investor exchanged his interests for a promissory note that Melton would then repay.

8.      Because Melton knew he was transferring the properties simply to mollify two other complaining investors, and would not receive anything other than a release in return, Melton knew that he would not get something better for one investor or repay the promissory note given to the other investor.

9.      This misconduct is not the first time Melton has been charged with violating securities laws.   He was previously enjoined from violating the antifraud provisions of the federal securities laws and barred from association with certain members of the securities industry as a result of a February 1997 Commission enforcement action that alleged, among other things, misappropriation of advisory clients' funds.

10.      Through their conduct, Melton and Integrated Consulting (collectively "Defendants") have engaged in acts, practices, schemes, and courses of business that violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

11.       Unless restrained and enjoined by this Court, Defendants will continue to engage in the transactions, acts, practices, and courses of business alleged in this Complaint, and in transactions, acts, practices and courses of business of similar purport and object.

## JURISDICTION AND VENUE

12.      The Commission brings this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d), (e)], to enjoin the Defendants from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, and transactions, acts, practices, and courses of business of similar purport and object, and for civil penalties and other equitable relief.

13. The Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], and Sections 21(d), 21(e) and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

14. Defendants, directly and indirectly, made use of the mails, the means and instruments of transportation or communication in interstate commerce, and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this Complaint, and made use of the mails and means or instrumentality of interstate commerce to effect transactions, or to induce or to attempt to induce the purchase or sale of securities alleged in this Complaint.

15. Venue is proper in this district because certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act and Exchange Act occurred in the Middle District of North Carolina and because defendant resided in this district during the events in question.

## THE DEFENDANTS

16. Marshall E. Melton, age 65 and a resident of Greensboro, North Carolina, has been a licensed North Carolina insurance agent since 1997. He is the owner and sole managing member of Integrated Consulting.

17. In February 1997, the Commission charged Melton and entities he then controlled with violations of the antifraud provisions of the federal securities laws. *See SEC v. Marshall E. Melton, et al.*, Civ. Action File No. 2:97 CV 00151 (M.D.N.C. 1997).

-4-

18.     The complaint in that matter alleged that Melton misappropriated funds of multiple advisory clients whom he had fraudulently induced to invest in three private placements.

19.     Melton subsequently settled the Commission's action by consenting to a court order imposing injunctive relief but waiving the payment of disgorgement and a civil penalty based on his demonstrated inability to pay.

20.     Also in 1997, based on the same underlying misconduct, Melton was charged criminally with, and pled guilty to, North Carolina state securities fraud charges. He was sentenced to five years of supervised probation, of which he served only one year before being released.

21.     In June 2003, following institution of an administrative proceeding based on the prior issuance of the injunction, the Commission barred Melton from association with various members of the securities industry. *In the Matter of Marshall E. Melton & Asset Mgmt. & Research, Inc.*, Exchange Act Rel. No. 48228 (Comm'n Op. June 25, 2003).

22.      Integrated Consulting is a North Carolina limited liability company formed by Melton in November 2012. He is its sole managing member. Between approximately March 2016 and April 2021 ("the Relevant Period"), Integrated Consulting was Melton's principal business entity.

23.     In written materials, Melton occasionally referred to this entity as "Integrated Consulting and Management, LLC," using the word, "and," instead of an ampersand.

## RELATED ENTITIES

24.     Laurinburg Partners, LLC ("Laurinburg Partners") was a North Carolina limited liability company formed by Melton in June 2014 and administratively dissolved in June 2021 due to its failure to file its annual report. Integrated Consulting was its sole managing member.

25.     Integrated Development Group, LLC ("Integrated Development") was a North Carolina limited liability company formed by Melton in September 2013 and administratively dissolved in October 2019 due to its failure to file its annual report. Integrated Consulting was its sole managing member.

26.     Laurinburg Development Group, LLC ("Laurinburg Development") was a North Carolina limited liability company formed by Melton in May 2017 and administratively dissolved in February 2020 due to its failure to file its annual report.

## FACTS

### A.     The Laurinburg Offering

27.     During the Relevant Period, Melton offered and sold to seven investors between at least $1,036,500 and as much as $1,490,410 of interests in what he described to them as a real estate development venture that he was undertaking in Laurinburg, North Carolina.

28.     In soliciting their investments, Melton told the seven investors that he would use their funds to purchase properties in disrepair in downtown Laurinburg, renovate those properties for rental income and/or resale, and pay the investors a return from the rental income obtained or the capital appreciation realized upon the properties' resale.

-6-

29.     Six of the seven investors that Melton solicited were existing clients of his insurance business, and all had a high level of trust in him.

30.     At the time they first invested in the Laurinburg Project, the ages of these clients ranged from just under 60 to just over 86, with an average age of 75.

31.     Each of these six investors had previously invested in another real estate venture promoted by Melton, known as Bulk Home Buyers.

32.     The form of the investments that Melton sold to the seven investors varied to some degree.  He sold "units" to some investors and promissory notes to other investors.  The precise form of the investment for the remaining investors is not clear.

*(1)    Unit Investors*

33.     To two investors ("the Unit Investors"), Melton sold "units" in Laurinburg Partners, an entity which Melton controlled and which he described to the Unit Investors as the entity through which he would pursue the Laurinburg Project.

34.     One of the Unit Investors was almost 79 years old when she invested in the Laurinburg Project and was a retired school teacher.  The other was a 53 year old software engineer.

35.     The retired school teacher and her husband had known Melton for many years prior to this investment.  They initially met him through their church, where Melton served as a "Steven Minister"— a lay church volunteer who gives counseling to community members experiencing life difficulties.

36.     Several years before her investment in the Laurinburg Project, Melton learned that the retired school teacher had recently received an inheritance.  Melton convinced her to invest $60,000 in the Bulk Home Buyers offering—money that she ultimately lost when Melton told her that the money had been stolen.

37.     A few years later, Melton approached the retired school teacher to invest in the Laurinburg Project.  In addition to his representations about how he would use her investment proceeds, Melton told the retired school teacher that, if she invested $40,000, he would give her credit for the money she had lost in the Bulk Home Buyers offering.

38.     On or about February 24, 2017, the retired school teacher signed a Subscription Agreement giving her five units of Laurinburg Partners for a $100,000 investment,

39.     The other Unit Investor, a 53 year old software engineer, was not an insurance customer of Melton, and had met Melton through their common membership in a gym.

40.     This investor signed a subscription agreement on December 1, 2017, which stated that the investor was receiving two units in Laurinburg Partners, with each unit valued at $30,000 for a total investment of $60,000

41.     Prior to their investments, Melton told both Unit Investors that their funds would be used to purchase and redevelop various buildings that he was buying along the main street of Laurinburg.

42.     In advance of their unit purchases, Melton gave both investors a Subscription Booklet bearing the name of Laurinburg Partners and identifying by address four buildings in Laurinburg that he was to purchase and redevelop.

43.     The Subscription Booklet also contained photos of each of the buildings as they then existed, artist renderings of how the buildings would appear after renovation, and projections of rental income and capital appreciation upon completion of the project.

44.     Along with the Subscription Booklet, Melton also gave these investors a document entitled, "Operating Agreement of Laurinburg Partners, LLC" ("Operating Agreement"), which stated that investors acquiring "units" would become "Members" of the entity and their invested amounts would become their capital contribution to the business.

45.     The Operating Agreement further stated that members would earn a "Preferred Return," paid quarterly from distributable cash and calculated as simple interest accruing at a rate of twenty percent (20%) on the member's "Unrecovered Capital," meaning their capital contribution that had not been paid back to them through Preferred Returns.

46.     Once a member had been paid back their initial capital contribution, that member would thereafter share in the profits and losses of the business in accordance with their proportional ownership of units.

47.     Although Melton told the Unit Investors that Laurinburg Partners would be involved in developing multiple Laurinburg properties which he was purchasing and redeveloping—a claim that the photos and statements in the Subscription Booklet apparently confirmed—the actual language of the Operating Agreement limited the purpose of Laurinburg Partners as to "own, hold, . . . operate, lease, . . . and otherwise deal with" only a single property in Laurinburg which the Operating Agreement further identified as 237 Main Street, Laurinburg.

48.     To two additional investors ("the Promissory Note Investors"), Melton sold promissory notes issued by either Integrated Consulting or Laurinburg Development, which he told investors would be the entity responsible for renovating the buildings purchased in Laurinburg.

49.     Prior to their investments, both of the Promissory Note Investors received photos of the buildings being bought, as well as renderings of what the buildings would look like after renovation.

50.     One of the Promissory Note Investors was 82 years old when he invested in the Laurinburg Project and was a retired member of U.S. Marine Corps and husband of the retired school teacher (a Unit Investor).

51.     Based on Melton's representations and following his instructions, the retired Marine Corps investor transferred $100,000 to a bank account of Integrated Consulting, in exchange for which he received a $100,000 promissory note, dated July 26, 2017, from Integrated Consulting.

52.     The promissory note bore "simple interest at a rate of Twenty Percent (20%)" and had no specific term, being payable instead "upon entrance into phase 2 of the project."

53.     The second Promissory Note Investor was 76 years old when he invested in the Laurinburg Project and was a retired U.S. military and private practice physician.  A colleague had referred the retired physician to Melton as a potential financial adviser.  Following this referral, the retired physician relied on Melton for financial guidance.  Prior to the Laurinburg

-10-

Project investment, Melton had recommended several other real estate investments, including Bulk Home Buyers.

54.　　After the retired physician told Melton that his wife had become ill with Alzheimers, and sought Melton's advice on how to accumulate the assets needed to pay for her care, Melton recommended that the retired physician mortgage his home in the amount of $250,000 and invest the mortgage proceeds in the Laurinburg Project.

55.　　The retired physician followed Melton's advice, and purchased from Melton three promissory notes, including two from Integrated Consulting, each dated May 22, 2017, for a total investment of $150,000, and one from Laurinburg Development, dated April 11, 2017 (over a month before this entity was even formed) for $100,000.

56.　　The two promissory notes from Integrated Consulting promised to pay "simple interest at a rate of Twenty-five Percent (25%)" while the promissory note from Laurinburg Development promised "simple interest at a rate of Twenty Percent (20%)."  All three notes stated that they were payable "upon entrance into phase 2 of the project."

57.　　The promissory notes to both Promissory Note Investors also stated that "[t]his Note is issued in payment funds for use in general business purposes, including both direct and indirect costs, in furtherance of the redevelopment projects in Laurinburg, North Carolina." But Melton verbally represented to both Promissory Note Investors that their investment proceeds would be used for the Laurinburg Project.

58.　　Melton sent at least some of the retired physician's promissory notes to him through the U.S. mail.

-11-

59.     To the remaining three investors, Melton sold investments in the Laurinburg Project, but did not give those investors promissory notes or other documentation confirming the form of the investment.

60.     Two of these investors were a husband and wife.  The husband was a retired physician and professor.  When they began investing in the Laurinburg Project, the husband was 72 years old and his wife was almost 60.  These two investors collectively invested at least $615,000 in the Laurinburg Project between March 29, 2016 and August 1, 2019.  They transferred a significant amount of their investment funds via wire transfers.

61.      Melton verbally promised these investors that they would receive a 5% return from their investment in the Laurinburg Project.

62.     The third investor was an 86 year old widow when she invested in the Laurinburg Project.  Between May 26, 2016 and July 15, 2019, she wrote at least eleven checks totaling $128,410 to Integrated Consulting.   Eight of the checks have no notation on their face indicating their purpose.  However, three of the checks—one for $15,000 dated July 5, 2016, another for $70,000 dated July 16, 2016, and a third for $3,000 dated January 1, 2019—include references to the Laurinburg Project in their memo sections.

B.     **Melton's Misrepresentations and Omissions**

63.     Melton's claims to investors concerning the Laurinburg Project were largely false.  While Melton used approximately $340,000 of investor funds to purchase seven properties in Laurinburg, namely, two office buildings, three retail buildings, one restaurant building and a parking lot, he made little effort to renovate, develop, or commercially use them.

-12-

64.     Although Melton made presentations on his redevelopment plans to the City Council and various local business groups and began gutting the interiors of a number of the buildings, his interior demolition work soon stopped and he reneged on paying the invoices given him by the two local firms he had hired to demolish and haul away the buildings' interior material.

65.     Melton never paid the county or city property taxes on the buildings, and his uncompleted work left one building without glass windows and another so structurally unsound that it collapsed onto the sidewalk and an adjoining property during a seasonal hurricane.

66.     Melton deposited the vast portion of the funds that the seven investors gave him for the Laurinburg Project into a bank account of Integrated Consulting, and then diverted for his own use the majority of those funds.

67.      He did this by spending investor money directly from Integrated Consulting's bank account on personal expenses, as well as transferring portions of investor funds, some of which were by wire, to his personal bank account.  In fact, a pattern emerged with Melton's receipt of each investor's funds, namely, that the balance of Integrated Consulting's bank account had become nearly depleted, Melton received new investor funds into the account, and thereafter diverted much of those investor funds to his own use.

68.     For example, immediately prior to receiving $23,500 of investment funds from the retired school teacher (a Unit Investor) on February 24, 2017, Integrated Consulting's bank account had a balance of $34.84.  After receiving these investment funds, Melton transferred $12,700 to his own personal bank accounts, used another $3,745 to pay his personal credit cards, and spent another $6,134 for various personal expenses such as purchasing groceries,

-13-

going to restaurants, and paying fees at a local anti-aging wellness clinic (which, on its website, boasts of offering nutritional and body-weight counseling, hormone replacement therapy, and treatments for both male and female health concerns).

69.     Immediately prior to receiving $52,995 of investment funds from the software engineer (a Unit Investor) on December 11, 2017, Integrated Consulting's bank account balance was only $1,125.62.  After receiving these investment funds, Melton transferred $12,000 to his personal bank accounts, used another $6,269.36 to pay his personal credit cards, and sent another $6,550 to earlier investors in the Bulk Home Buyers offering.  He also spent $13,810.49 on an array of other personal expenses at grocery stores, restaurants, retail and convenience stores, liquor stores, and the anti-aging wellness clinic.

70.     Shortly before receiving the $100,000 of investment funds from the retired Marine Corps member (a Promissory Note Investor) in July 2017, Integrated Consulting's bank account balance was a negative $518.55.  After receiving these investment funds, Melton transferred $12,000 to his personal bank accounts, used another $9,647.19 to pay his personal credit cards, and spent another $23,518.58 for other personal expenses such as purchasing groceries and going to restaurants, liquor stores, and pharmacies.  He also paid discrete expenses at a day spa, a men's clothing store, and the Department of Motor Vehicles.  A portion of this investor's funds was also spent at the anti-aging wellness clinic.

71.     Melton also misappropriated a significant portion of the $150,000 invested by the retired physician (a Promissory Note Investor).

72.      The $150,000 was deposited into the Integrated Consulting bank account in four transfers between December 2016 and May 2017.  Immediately prior to receiving three of the

-14-

transfer, the balance of Integrated Consulting's bank account was under $1,000, while the balance was under $7,500 just before receiving the fourth transfer.

73.     Of the total deposits coming from this investor, Melton transferred $35,000 to his personal bank accounts, used another $18,056.08 to pay his personal credit cards, and spent another $29,013.30 for other personal expenses, such as purchasing groceries, going to restaurants, specialty and liquor stores, and again paying expenses at the anti-aging wellness clinic.

C.     **Melton's Subsequent Fraud**

74.     Beginning in April 2021, Melton engaged in further fraud to mollify two of the investors who were complaining about a lack of returns.

75.     Specifically, in early April 2021, after the 72 year-old retired physician and professor and his almost 60 year-old spouse complained about the lack of returns on their investments, Melton approached the two Unit Investors and requested that they assign their units back to him personally.

76.     To induce this assignment, Melton told the retired school teacher that he needed her units transferred to him so that he could sell them and get her something better. In response, the retired school teacher transferred her units in Laurinburg Partners to Melton on April 6, 2021.

77.     At approximately the same time, Melton told the software engineer that Melton needed him to transfer his units in Laurinburg Partners to Melton because Melton had found a buyer for the property and needed to make a sale quickly.

-15-

78.     When the software engineer questioned Melton about the details of the sale, Melton responded with urgency, claiming that the project was failing and that if a sale did not occur with this opportunity, the software engineer would lose the whole investment.

79.     In return for the units, Melton offered, and the software engineer accepted, a promissory note for $60,000, dated April 16, 2021 and due and payable on July 1, 2022.

80.     After obtaining back the units held by the Unit Investors, Melton transferred five of the Laurinburg properties to the two complaining investors in exchange for a mutual release of all claims, including any claims by them against him. Among the properties he transferred was ownership of the one Laurinburg property owned by Laurinburg Partners.

81.     Melton's representations to the Unit Investors to induce them to assign their units to him were false and misleading. Melton had no buyer and wanted the units returned so that he could transfer the property owned by Laurinburg Partners, along with four other properties, to the complaining investors to obtain a release of claims against Melton personally.

82.     Melton did not disclose to the Unit Investors that, in return for the transfer, he was receiving no monetary value that he could use to get something better for the retired school teacher or to pay off the promissory note given to the software engineer. In fact, Melton defaulted on the promissory note, and the retired school teacher has never received a new investment or other compensation for her assignment of her units in Laurinburg Partners.

-16-

## COUNT I

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

83.     Paragraphs 1 through 82 are hereby re-alleged and incorporated herein by reference.

84.     From approximately March 2016 through April 2021 Defendants, in the offer and/or sale of securities, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud, all as more particularly described above.

85.     While engaging in the course of conduct described above, Defendants acted with scienter, that is, with an intent to deceive, manipulate, or defraud, or acted with a severely reckless disregard for the truth.

86.     By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

### Violations of Sections 17(a)(2) and (a)(3) of the Securities Act
### [15 U.S.C. §§ 77q(a)(2) and (a)(3)]

87.     Paragraphs 1 through 82 are hereby re-alleged and incorporated herein by reference.

88.     From approximately March 2016 through April 2021, Defendants, in the offer and/or sale of securities, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly

a. obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

b. engaged in transactions practices or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

89. While engaging in the course of conduct described above, Defendants acted at least negligently.

90. By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and (a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2), (a)(3)].

## <u>COUNT III</u>

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
[15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(a), (b) and (c)]**

91. Paragraphs 1 through 82 are hereby re-alleged and incorporated herein by reference.

92. From approximately March 2016 through April 2021, Defendants, in connection with the purchase or sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly:

a. employed devices, schemes, and artifices to defraud;

b. made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

-18-

c.  engaged in acts, practices, and courses of business which would and/or did
    operate as a fraud and deceit upon Client and/or others, all as more
    particularly described above.

93.     In engaging in such conduct, Defendants acted with scienter; that is, with an
intent to deceive, manipulate, or defraud, or acted with a severely reckless disregard for the
truth.

94.     By reason of the foregoing, Defendants, directly and indirectly, have violated
and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C.
§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission seeks the following relief:

### **I.**

Findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of
Civil Procedure, finding that Defendants committed the violations alleged herein.

### **II.**

Permanent injunctions enjoining Defendants from violating, directly or indirectly,
Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)], Section
10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b) and (c) thereunder [17
C.F.R. § 240.10b-5(a), (b) and (c)].

### **III.**

An order enjoining Melton from directly or indirectly, including, but not limited to,
through any entity owned or controlled by him, participating in the issuance, purchase, offer, or
sale of any security, including any security related to interests in real estate, provided, however,

-19-

that such injunction shall not prevent Melton from purchasing or selling securities for his own

personal accounts

## IV.

An order requiring the disgorgement by Defendants, jointly and severally, of all ill-

gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of

the federal securities laws.

## V.

An order pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and

Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] imposing civil penalties against

Defendants.

## VI.

Such other and further relief as this Court may deem just, equitable, and appropriate in

connection with the enforcement of the federal securities laws and for the protection of

investors.

Dated:  May 30, 2023.

Respectfully submitted,

*/s/ M. Graham Loomis*
M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
Tel: (404) 842-7622
Email: loomism@sec.gov

Robert F. Schroeder
Senior Trial Counsel
Georgia Bar No. 001390
Tel: (404) 942-0688
Email: schroederr@sec.gov

COUNSEL FOR PLAINTIFF

-20-

U.S. Securities and Exchange Commission
Atlanta Regional Office
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382