IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:23-CV-434 |
| MARSHALL E. MELTON and INTEGRATED CONSULTING & MANAGEMENT, LLC, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

The Securities and Exchange Commission has sued Marshall Melton and Integrated Consulting & Management, LLC for violating the Securities Act and the Exchange Act in connection with the defendants' solicitation of funds for a project to redevelop buildings in downtown Laurinburg, North Carolina. The SEC moves for summary judgment. There are no disputed questions of material fact as to liability, and the motion will be granted. An opinion will follow as time permits.

**Liability**

In summary, the record establishes without dispute that:

1. Mr. Melton, acting for himself and on behalf of ICM, solicited and received investments from seven individuals to use for the "Laurinburg Project." Both directly and circumstantially, Mr. Melton represented to the investors that these funds would be used to buy and develop real estate in downtown Laurinburg, North Carolina, and that the project would generate income and profits for the

investors. These representations were not true when made. At the time Mr. Melton made the representations, he intended to spend large chunks of the money on personal expenses unrelated to the Laurinburg Project.

2. Between March 2016 and August 2019, these seven individuals collectively invested over $1.25 million in the Laurinburg Project. During this time, ICM deposited $1,342,565.66, into its bank account; all but $76,070.77 came from these seven investors. All but one of these seven investors made multiple investments over the course of the scheme.

3. The Laurinburg Project was a common enterprise and the investors were led to expect profits solely from the efforts of Mr. Mellon. The promissory notes, loans, and purchase and transfer of membership units constitute securities transactions.

4. Mr. Melton never told the seven investors that any of their investments would be used to fund Mr. Melton's lifestyle, pay his debts, or go towards his other businesses. He told all investors the money would be used for the Laurinburg Project.

5. At no time did Mr. Melton tell any of these investors that he had previously been convicted of securities fraud or that he was subject to an injunction barring him from violating federal securities laws.

6. As the seven investors sent money to the defendants over the years, Mr. Melton spent it almost immediately. Large parts of the money went to pay personal expenses for himself and his family with no possible connection to the

Laurinburg Project. These include such items as legal fees related to earlier business ventures, his divorce, and a speeding ticket, rent for his daughter's apartment, jewelry, spa treatments, clothes, toys, wine, testosterone, groceries, bills for his insurance, and trips to Las Vegas and other resort areas. He also used these investment funds to pay back investors in other projects unrelated to the Laurinburg Project.

7. Mr. Melton spent well over half of the funds invested by these seven people on items and expenses with no possible connection to the Laurinburg Project.

8. Mr. Melton made additional representations to two of these investors, Diane Sisley and James Tyson, that they could recoup money they lost in previous deals with him if they invested funds in the Laurinburg Project. These representations were not true when made, as Mr. Melton had already spent thousands of investor funds on personal items, and he did so immediately with much of the new funds Ms. Sisley and Dr. Tyson invested.

9. Mr. Melton represented to Ms. Sisley that if she assigned her membership units to him, he would sell them and "get her something better." This representation was not true when made. He did not intend to use the proceeds to "get her something better" and instead intended to use most of these funds for his personal benefit. And when Ms. Sisley assigned the units to him, that is what he did; he immediately assigned the units to other people with claims against him.

10. Mr. Melton acted with scienter when he made these misrepresentations. Among other facts, the close temporal proximity between his misrepresentations, the receipt of money from the investors, and the immediate use of those funds on items unrelated to the investments show scienter.

11. Mr. Melton made affirmative representations to Mr. Flanders that he was an experienced and successful real estate investor. Mr. Melton had a fiduciary relationship with five of the other six investors: David Walker, Marjorie Walker, Frederick Sisley, Diane Sisley, and James Tyson. By failing to tell these investors that he had been convicted of securities fraud and was subject to an injunction prohibiting him from violating federal securities laws, Mr. Melton made material misrepresentations. The overall circumstances show scienter, and there is no evidence his omission of these facts was limited to negligence.

These and other undisputed facts show that Mr. Melton made material misrepresentations or omissions to all seven investors in connection with the purchase or sale or the offer or sale of securities, that there was a nexus to interstate commerce, and that Mr. Melton acted with scienter. The defendants present no contradictory evidence from which a rational jury could conclude otherwise. Thus, the SEC is entitled to summary judgment on its claim in Count I that the defendants violated § 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1), Doc. 1 at ¶¶ 83–86; its claim in Count II that the defendants violated §§ 17(a)(2) and (a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and (a)(3), Doc. 1 at ¶¶ 87–90; and its claim in Count III that the defendants violated

§ 10(b) of the Exchange Act and Rule 10b–5, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5(a), (b), and (c).  Doc. 1 at ¶¶ 91–94.

There are some disputed questions of fact as whether some of the funds Mr. Melton spent were legitimately related to the Laurinburg Project or not.  Given the scope of his scam and the relatively small amounts Mr. Melton claims were business-related, these disputes are not material to liability.  They can be resolved during the remedies stage, if they remain at issue.  The Court has fully considered the defendants' other arguments on liability and finds them to be without merit.

## The Statute of Limitations

The defendants have raised issues about the statute of limitations.  It seems likely that this will affect the extent to which the SEC can seek penalties as to all counts and disgorgement as to Count II.  But the SEC has moved for summary judgment as to liability only, so these issues can be resolved later.

There is a five-year statute of limitations on civil penalties for all three causes of action.  Because the SEC needed to show scienter for Counts I and III, there is a ten-year statute of limitations for disgorgement as to those counts; because the SEC did not need to show scienter for Count II, there is a five-year statute of limitations for that count.  There is a ten-year statute of limitations for equitable relief such as injunctions for all of the SEC's claims.

All conduct at issue occurred within ten years of the filing of this lawsuit, so injunctive relief and disgorgement are available.  Some conduct occurred more than five years before suit was filed, so civil penalties will likely be limited.  No party has raised

5

any disputed question of material fact as to when the defendants made the misrepresentations and when the investors transferred money or other things of value; to the extent the parties disagree about what events start the clock on the statute of limitations, those are legal questions the Court can resolve as part of resolving any claim for penalties.

It is **ORDERED** that the plaintiff's motion for summary judgment, Doc. 37, is **GRANTED**.

This the 31st day of March, 2025.

_____
UNITED STATES DISTRICT JUDGE

6

Case 1:23-cv-00434-CCE-JLW    Document 48    Filed 03/31/25    Page 6 of 6