IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:23-CV-434 |
| MARSHALL E. MELTON and INTEGRATED CONSULTING & MANAGEMENT, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The Securities and Exchange Commission sued Marshall Melton and Integrated Consulting & Management, LLC for violating the Securities Act and the Exchange Act in connection with the defendants' solicitation of funds for a project to redevelop buildings in downtown Laurinburg, North Carolina. The Court granted summary judgment for the SEC on all three liability claims. The parties agreed to submit the damages and remedies issues for resolution by the Court on the written record.

Mr. Melton and his company profited from their securities fraud, spending hundreds of thousands of dollars received from investors on unrelated personal expenses and on other businesses. Mr. Melton is a serial violator of the securities laws. He must give up his profits, experience appropriate punishment by way of civil penalties, and face the injunctive restrictions necessary to discourage further violations. The Court finds that disgorgement, civil penalties, and injunctive relief are all appropriate.

I. Procedural Background

The Court granted summary judgment on liability issues for the SEC on March 31, 2025. *See* Doc. 48 at 1; *see also* Doc. 49. In advance of the scheduled trial on the remaining issues, the Court held a status conference with counsel. *See* Doc. 47; Minute Entry 4/2/25. The parties agreed to waive trial by jury on all remaining issues associated with damages and remedies and to submit those issues to the Court on a paper record pursuant to a schedule established during the hearing. *See* Minute Entry 4/2/25.

The SEC has now filed a motion for remedies. Doc. 50. It seeks financial remedies in the form of disgorgement plus interest and penalties, along with injunctive relief. The defendants challenge the way the SEC has calculated the disgorgement amount and suggest a lower amount. They also contend civil penalties are barred by the statute of limitations or, in the alternative, that a lower penalty is more appropriate. Finally, the defendants contend that injunctive relief is unnecessary.

II. Factual Background

Many of the facts are undisputed. *See* Doc. 49 at 2–6. To the extent they are not, the Court finds all facts in this section and throughout this order by a preponderance of the evidence. *See SEC v. Murphy*, 50 F.4th 832, 848 (9th Cir. 2022); *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 781–82 (5th Cir. 2017); *SEC v. Ginsburg*, 362 F.3d 1292, 1298 (11th Cir. 2004).

A. Mr. Melton's History of Securities Fraud

Almost three decades ago, Mr. Melton violated state and federal securities laws while inducing clients to invest. The SEC sued Mr. Melton and companies he controlled

over false statements he made to induce clients to invest. Doc. 49 at 2–3.[1] In 1998, he agreed to a permanent injunction, in which this Court ordered him to refrain from engaging in conduct that violated § 17(a) of the Securities Act, and he agreed to disgorge the income he received from the illegal scheme alleged in the complaint. *Id*. at 3.

In 1997, Mr. Melton was indicted on state charges arising from the same conduct. *Id*. In 2002, he was convicted of multiple counts of solicitation to commit securities fraud. *Id*. He received a suspended sentence and was placed on supervised probation for five years. *Id*. As conditions of probation, he was required to surrender his license for the purchase or sale of securities, not seek to be licensed to purchase or sell securities, and not engage in the sale of securities, except for himself or members of his family. *Id*. In 2003, the SEC barred Mr. Melton from associating with certain members of the securities industry and imposed other sanctions. *Id*.

B. **The Laurinburg Project**

In 2014, Mr. Melton established Integrated Consulting & Management, LLC. *Id*. Between 2016 and 2021, Mr. Melton and ICM solicited and received investments from seven clients, telling them he would use the money to buy properties in downtown Laurinburg, North Carolina, and renovate them for rental income and resale. *Id*. at 3-4.

Mr. Melton established a limited liability company, Laurinburg Partners, LLC. *Id*. ICM was the "Sole Initial Class A Membership Unit Owner" of Laurinburg Partners, and

---

[1] For ease of reading, the Court will cite the summary judgment decision, Doc. 49, for many undisputed facts. Citations to the underlying evidence can be found in that order for the interested reader.

Mr. Melton was the sole manager of ICM. *Id*. The money received from investors in the Laurinburg Project flowed through ICM. *Id*.

Mr. Melton provided most of the clients with documents that identified the properties the LLC would buy and detailed the plans to renovate them and otherwise documented their investments. *Id*. at 4–5. During his solicitations for investing in this Project, Mr. Melton did not tell the clients that a court had enjoined him from violating § 17(a) of the Securities Act, that he had to disgorge funds in connection with a securities fraud case, that he had been convicted of securities fraud, or anything else about his securities disciplinary and criminal history. *Id*. at 5.

Between March 2016 and August 2019, ICM deposited $1,342,565.66 into its bank account. *Id*. All but $76,070.77 came from these seven clients. *Id*. The defendants used more than half of the investor funds (approximately $758,000) for the personal benefit of Mr. Melton or his family or to benefit other businesses. Doc. 37-76 at ¶¶ 9, 46.

In April 2021, Mr. Melton misrepresented to one set of investors, the Sisleys, that Diane Sisley needed to assign her "membership units in Laurinburg Partners to him so he could sell them for [her] and get [her] something better," Doc. 37-3 at ¶ 18, when he actually assigned them to the Walkers to settle their claims against him. Doc. 37-32 at ¶ 30; Doc. 37-99 at 142–43.

In April 2021, Mr. Melton told another investor, Mr. Flanders, that Mr. Melton needed to sell the Laurinburg properties because he was losing money on them and asked Mr. Flanders to provide his membership units in Laurinburg Partners to Mr. Melton, claiming that he would be unable to sell the Laurinburg properties without them. Doc.

4

37-19 at ¶ 15.  After Mr. Flanders insisted that he receive some compensation for the units, he received a promissory note from Mr. Melton, dated April 16, 2021, in which ICM promised to pay him $60,000 on July 1, 2022.  *Id*. at ¶¶ 15–16.  Mr. Flanders signed Mr. Melton's assignment form and returned it to him.  *Id*. at ¶ 18.  Mr. Melton never paid the $60,000 to Mr. Flanders.  *Id*. at ¶ 19.

Additional findings of fact will be stated as needed in connection with specific issues.

## III. Remedies for Securities Law Violations

"Once a district court has found federal securities law violations, it has broad power to fashion appropriate remedies." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996) (cleaned up).  In civil actions, the SEC can seek civil penalties, 15 U.S.C. § 78u(d)(3), and equitable relief for the benefit of investors.  *Id.* § 78u(d)(5); *Liu v. SEC*, 591 U.S. 71, 75 (2020).  Equitable relief can take the form of injunctions and disgorgement.  *Liu*, 591 U.S. at 80–81; *Kokesh v. SEC* (*Kokesh I*), 581 U.S. 455, 458–59 (2017); *SEC v. Marker*, 427 F. Supp. 2d 583, 590 (M.D.N.C. 2006).  Prejudgment interest may also be awarded in appropriate cases.  *Marker*, 427 F. Supp. 2d at 592.

## IV. Disgorgement

The umbrella of equitable relief includes the remedy of disgorgement, by which wrongdoers are deprived of their net profits from unlawful activity.  *Liu*, 591 U.S. at 80–81; *Kokesh I*, 581 U.S. at 458–59.  Courts order disgorgement in SEC enforcement proceedings "in order to remove any monetary reward for violating securities laws and to protect the investing public by providing an effective deterrent to future violations."

5

*Kokesh I*, 581 US at 459 (cleaned up). Net profits are the total proceeds derived from the sale of the securities minus any "legitimate expenses." *Liu*, 591 U.S. at 91–92. For purposes of this analysis, "legitimate expenses" refers to expenses that "arguably have value independent of fueling a fraudulent scheme." *Id.* at 92.

The SEC cannot "seek[] an equitable remedy in excess of a defendant's net profits from wrongdoing." *Id.* at 85. Thus, in support of a disgorgement award, the SEC must produce "a reasonable approximation of the defendant's ill-gotten gains." *SEC v. Zada*, 787 F.3d 375, 382 (6th Cir. 2015) (cleaned up). "Once the SEC does so, the defendant bears the burden of proving that the SEC's estimate is unreasonable." *Id*.

The SEC asks that a disgorgement judgment be entered against the defendants jointly and severally in the amount of $916,341 plus $312,460.84 in interest. Doc. 53 at 1–2. As previously found, the defendants raised $1,266,494.89 from the Laurinburg investors. Doc. 49 at 5. It is undisputed that the defendants used at least $350,152.66 for legitimate expenses appearing to relate to the Laurinburg Project and used at least $834,009 for illegitimate expenses. Doc. 51 at 9–10; Doc. 52 at 4–5; Doc. 53 at 2.[2]

---

[2] The defendants sent $277,961 to various personal accounts and withdrew an additional $25,576 in cash, Doc. 37-76 at ¶¶ 16, 18; used $117,905 to pay personal or Signature Wealth (a separate Melton business) credit cards, *id*. at ¶¶ 19–23; paid $90,893 for "Non-Laurinburg Legal Fees," *id*. at ¶ 41; spent $68,951 to lease a Jaguar car for Melton and his wife and $14,423 on other "automobile expenses," *id*. at ¶¶ 24, 27; paid $48,005 for rent, including rent for Melton's daughter's apartments and Signature Wealth, *id*. at ¶ 43; used $39,008 to pay investors in other (non-Laurinburg) offerings made by Melton, *id*. at ¶ 39; used $34,424 for medical expenses, *id*. at ¶ 42; and $26,766 for miscellaneous personal expenses, such as beauty, clothing, and groceries. *Id*. at ¶¶ 28, 30–31, 34.

6

Thus, the only dispute relates to the remaining $147,727.34. Doc. 52 at 4–6; Doc. 53 at 2.[3]

The defendants appear to have spent this money on accounting fees, financial services, lease payments, inspections, environmental services, painting, storage, delivery fees, and purchases at retail establishments. Doc. 50-4 (identified as "unknown use"). But the defendants' records do not show that these expenses related to the Laurinburg Project. Doc. 50-1 at ¶ 14. Given the defendants' willingness to spend money provided by the Laurinburg investors on other matters, including other projects of Mr. Melton's and his other business interests, and the absence of evidence showing that these funds were spent on the Laurinburg project, the court finds that the disputed $147,727.34 constitutes net profits from the wrongdoing that the defendants must disgorge. *See SEC v. Bernath*, 15-CV-485, 2017 WL 527662, at *2 (W.D.N.C. Feb 8, 2017) ("In determining the appropriate disgorgement amount, all doubts are to be resolved against the defrauding party.") (cleaned up); *see also, Providence Rubber Co. v. Goodyear*, 76 U.S. 788, 803–04 (1869) (no deduction is appropriate for claimed expenses where the "manner in which the books of the [company] were kept renders such an account impossible as to the business done in [its] name.").

The Court finds that the defendants gained $916,341 in net profits. Disgorgement in the sum of $916,341 will be ordered.

---

[3] Because the SEC needed to show scienter for Counts I and III, there is a 10-year statute of limitations for disgorgement as to those counts. Because the SEC did not need to show scienter for Count II, there is a five-year statute of limitations for disgorgement as to that count. 15 U.S.C. § 78u(d)(8)(A).

7

## V. Prejudgment Interest

"Like disgorgement, an award of prejudgment interest is intended to prevent the defendant from profiting from his or her illegal conduct." *Marker*, 427 F. Supp. 2d at 592; *see SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996) ("Requiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity."). In deciding whether to award prejudgment interest, courts consider the following factors: "(1) the need to fully compensate the wronged party for actual damages suffered; (2) the relative fairness of an award; (3) the remedial purpose of the statute involved; and (4) other general principles deemed relevant by the court." *Marker*, 427 F. Supp. 2d at 592 (citing *Com. Union Assurance Co. v. Milken*, 17 F.3d 608, 613 (2d Cir. 1994)).

The Court awards prejudgment interest in the amount of $312,460.84 based on the disgorgement amount of $916,341. All the factors support an award of prejudgment interest. There is a need to fully compensate the aggrieved parties, who invested in the Laurinburg project years ago and have been deprived of the use of their money. Such an award is fair, as Mr. Melton fraudulently solicited money from multiple investors for years and used more than half of the funds for personal benefit. *See* Doc. 49 at 3–6; *Marker*, 427 F. Supp. 2d at 592. The SEC used the IRS's prevailing rate of interest on tax payments to calculate the interest, and the defendants do not disagree with that method. Doc. 53-1 at 3, 5; Doc. 52 at 6. The defendants do not dispute the remedy of prejudgment interest and only request that the prejudgment interest be recalculated as the total amount of disgorgement is reassessed. Doc. 52 at 6.

8

The disgorgement and prejudgment interest awards are imposed jointly and severally. Mr. Melton is essentially the alter ego of his company ICM, for which he was the sole manager. *See SEC v. Johnson*, 43 F.4th 382, 390–92 (4th Cir. 2022); Doc. 37-76 at ¶ 5; Doc. 37-4 at 34.

## VI. Civil Penalties

Unlike disgorgement, which is directed to depriving wrongdoers of the proceeds of their illegal conduct, civil penalties "are intended to punish and label defendants wrongdoers." *Johnson*, 43 F.4th at 393 (cleaned up). "A civil penalty is necessary because disgorgement merely requires the return of illegal profits; it does not impose an actual economic penalty as a deterrent to violations of the securities laws." *See Marker*, 427 F. Supp. 2d at 592.

There is a five-year statute of limitations for civil penalties. 28 U.S.C. § 2462. The complaint here was filed on May 30, 2023, so penalties can be imposed for any misconduct occurring after May 2018.

The defendants contend that the statute began to run upon their misstatements or, at the latest, when the investors began investing. Doc. 52 at 6. Because the initial contributions to the Laurinburg Project were in 2016 and 2017, the defendants assert that civil penalties are barred. *Id*. at 7. But the cause of action accrues upon each purchase or sale of securities. *See, e.g., Andrews v. Fitzgerald,* 823 F. Supp. 356, 367 (M.D.N.C. 1993) ("In appropriate circumstances, the additional contributions are viewed as additional 'sales' of securities, thereby establishing a new limitations period") (citing *Goodman v. Epstein*, 582 F.2d 388, 409–14 (7th Cir. 1978)). Here, there are several such

violations that occurred in the five-year period leading up to the filing of this lawsuit on May 30, 2023.

For example, Mr. and Mrs. Walker made seven investments after May 30, 2018, and Mrs. Bates made two investments in 2019. Doc. 37-77 at 2. Mr. Melton also misappropriated investor funds during the five-year statute of limitations, which further supports civil penalties. *See id.* at 37-77 at 31–36 (detailing misappropriated investor funds from September 2018 through August 2019); *SEC v. Kokesh* (*Kokesh II*), 884 F.3d 979, 984–85 (10th Cir. 2018) (holding that the defendant's misappropriation of investor funds "constituted a series of repeated violations of an identical nature, with each unlawful taking being actionable for five years after its occurrence") (cleaned up). Other violations occurred in 2020 and 2021. *See supra* at 4–5.

The statutes establish three tiers of monetary penalties, each with a cap, based on the nature of the violation. *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3). Imposition of a civil penalty is discretionary, within those statutory limits. 15 U.S.C. §§ 77t(d), 78u(d)(3) (providing that the amount of the penalty "shall be determined by the court in light of the facts and circumstances" of the case).

A third-tier penalty is available when the violation (1) "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and (2) "resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). For individuals, the statutes authorize a third-tier penalty of up to $236,451 per violation. 15 U.S.C. §§ 77t(d)(2)(C),

10

78u(d)(3)(B)(iii); Adjustments to Civil Monetary Penalty Amounts, 90 Fed. Reg. 2767, 2769 (Jan. 13, 2025).

In exercising its discretion in determining whether to impose a penalty and the amount of the penalty, courts consider factors, including: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent;" and (5) "whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Johnson*, 43 F.4th at 394 (cleaned up). These factors, however, are "neither exhaustive nor should they be taken as talismanic." *Id*. (cleaned up).

The Court finds it appropriate to require Mr. Melton to pay a third-tier penalty. He acted fraudulently and deliberately. He misappropriated a significant amount of money from investors, several of whom he owed a fiduciary duty, Doc. 49 at 17, and he inflicted substantial losses. His past securities fraud violations make this illegal conduct even more egregious.

The SEC suggests a penalty of $472,902, Doc. 51 at 18, and the Court finds that appropriate. As noted in the order on summary judgment, he had at least two scienter-based violations, one of Section 10(b) of the Exchange Act and one of Section 17(a) of the Securities Act. Doc. 49 at 8, 19–21. A statutory penalty for each is sufficient to punish and large enough to matter. In its discretion, the Court will not use the higher amount of Mr. Melton's $261,000 pecuniary gain. 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)

11

Case 1:23-cv-00434-CCE-JLW    Document 54    Filed 10/02/25    Page 11 of 17

(permitting courts to impose a penalty that is "the greater of" the defendant's gross pecuniary gain or a statutory amount for the applicable tier).[4]

Mr. Melton suggests that a lower penalty is appropriate and points to a number of mitigating factors. Doc. 52 at 8. First, he notes that the disgorgement amount is substantial and is in effect punitive. *Id*. But that is not so; it does not punish Mr. Melton to make him give back the money he took under false pretenses and then spent on himself. Disgorgement and civil penalties serve different purposes and both are warranted here. *See Marker*, 427 F. Supp. 2d at 592.

Mr. Melton contends that there is no need for a penalty to deter him from further violations, pointing out that he has worked in another field for several years and has no intention of returning to work in the financial field. Doc. 52 at 8–9. But this argument does not address why he should not be punished for his past egregious violations.

Next, Mr. Melton points out that he complied with the SEC's investigation and with all subpoenas and deposition requests. *Id*. at 9. Responding to compulsory subpoenas and sitting for a deposition do not constitute "cooperation" and do not justify reduced sanctions. *See, e.g.*, *SEC v. Daubenspeck*, 469 F. Supp. 3d 859, 862 (N.D. Ill. 2020) ("[P]articipating in compulsory legal process, such as taking part in discovery and complying with a testimonial subpoena, is not cooperation sufficient to merit a reduction in insider trading penalties.").

---

[4] In his statute of limitations argument, Mr. Melton points out that only those investments made within the five-year period should be considered in setting the amount of the penalty. Because the Court uses the statutory amount rather than gross pecuniary gain in determining the civil penalty, the Court need not address this argument.

Finally, Mr. Melton asserts that he sought to make his investors whole, as shown through his settlement with the Walkers, and that he intended to pay all of his investors back. Doc. 52 at 9. He contends he believed he was permitted to use the funds as he did, he did not intend to commit securities fraud, and his prior violations were almost three decades ago. *Id*. at 9–10. It defies credulity for Melton to claim that he thought using investor funds to pay for his testosterone treatments, divorce, speeding tickets, and his daughter's apartment rent was permitted or would benefit the Laurinburg Project. This continued attempt to evade responsibility and the consequences of his actions by far-fetched justifications and excuses further shows why a significant penalty is appropriate.

The Court orders Mr. Melton to pay $472,902 in civil penalties.

## VII. Injunctive Relief

Section 78u(d)(5) empowers courts to award "any equitable relief that may be appropriate or necessary for the benefit of investors." *See SEC v. Moleski*, 21-CV-1065, 2021 WL 6752254, at *5 (C.D. Cal. Oct 21, 2021); *see also* 15 U.S.C. §§ 77t(b), 78u(d)(1) (authorizing injunctive relief upon a "proper showing."). This includes "conduct-based injunctions to prohibit individuals from soliciting others to buy or sell securities," *Moleski*, 2021 WL 6752254, at *5; 15 U.S.C. § 78u(d)(5), and from violating the securities laws in the future. 15 U.S.C. §§ 77t(b), 78u(d)(1); *SEC v. Perkins*, 19-CV-243, 2023 WL 5418712, at *2 (E.D.N.C. Aug. 22, 2023). The SEC seeks both an "obey-the-law" injunction and a conduct-based injunction.

To obtain the permanent injunctions, the SEC must met the usual requirements for injunctive relief: that (1) the SEC has actually succeeded on the merits, (2) irreparable

13

harm will likely result in the absence of the injunction (3) the balance of the equities tips in the SEC's favor, and (4) the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 32 (2008). In securities cases, district courts in this circuit and other circuit courts have held that "an injunction based on the violation of securities laws is appropriate if the SEC demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future." *Marker*, 427 F. Supp. 2d at 590 (cleaned up).[5]

Determining the likelihood of future violations "depends on the totality of circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant." *Mgmt. Dynamics*, 515 F.2d at 807. Factors include:

> (1) the seriousness of the original violation; (2) the isolated or recurrent nature of the infraction; (3) the degree of scienter involved on the part of the defendant; (4) the defendant's recognition of his unlawful conduct and the sincerity of his assurances against future violations; and (5) the likelihood that the defendant's occupation will present opportunities for future violations.

*Marker*, 427 F. Supp. 2d at 590.

All four *Winter* factors support the issuance of the injunctions the SEC seeks, and there is a significant likelihood of future violations. The SEC has prevailed on the merits, and the violations were serious, with a high degree of scienter. As detailed in the Court's summary judgment opinion, Mr. Melton previously committed similar securities

---

[5] *See SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980) (holding that in deciding whether to issue an injunction in a securities case courts look to "whether there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct"); *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975) (same); *SEC v. First Am. Bank & Tr. Co.*, 481 F.2d 673, 682 (8th Cir. 1973) (same).

violations, and he was involved previously in multiple real estate investment offerings. Doc. 49 at 2–3. He continues to say he did not act in bad faith, *see, e.g.*, Doc. 52 at 11, indicating that neither the Court nor the public can trust him to follow the law or to stay away from questionable financial activities in the future. The equities tip in the SEC's favor and the injunction in is the public interest because the defendants harmed others through substantial losses leading to the present violations and Mr. Melton previously violated securities laws. Doc. 49 at 2–3, 6, 28–29.

The defendants say injunctive relief is not necessary in view of the monetary remedies imposed. Doc. 52 at 10–11. But the injunctions serve a different purpose than monetary remedies, as injunctive relief protects the investing public by preventing future misconduct. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations").

They also challenge the necessity of the injunctions because Mr. Melton says he no longer works, nor intends to work in the future, in real estate investment or securities. Doc. 52 at 11. But his work in selling time shares has the potential for ongoing involvement in real estate deals that could easily lead to soliciting investments covered by the securities law. And, in any event, his self-proclaimed intentions are insufficient to show that the injunctions are unnecessary in view of his long history of selling investments, his previous securities law violations, and his disciplinary history. *See, e.g., Bonastia*, 614 F.2d at 913 ("[A] change in occupation, without more, will not provide a complete defense to an injunction suit.").

Finally, Mr. Melton contends he will abide by the injunction he agreed to follow in 1998 and highlights his age of 68 and what he says was an almost 30-year gap in time between his prior and present securities violations. Doc. 52 at 10–11. First, the time between the 1998 injunction and the beginning of the current securities fraud was closer to twenty years, and the fact that he was not accused of violations during that time frame is hardly persuasive given the extent of his fraud in the Laurinburg project. Age alone does not outweigh the other facts; his high level of scienter, the egregiousness of his misconduct, and his prior misconduct strongly suggest he is likely to engage in future misconduct. *See, e.g.*, *Marker*, 427 F. Supp. 2d at 591; *SEC v. Conrad*, 16-CV-2572, 2019 WL 13214083, at *1, 3 (N.D. Ga. Sep., 30, 2019) (finding misconduct, occurring 44 years before current violations relevant in evaluating appropriateness of injunctive relief).

The Court will grant the injunctive relief requested and will impose injunctions (1) permanently enjoining the defendants from violating § 10(b) of the Exchange Act and Rule 10b-5 thereunder and § 17(a) of the Securities Act by committing or engaging in specific actions or activities relevant to such violations and (2) enjoining Mr. Melton from participating in the issuance, offer, purchase, or sale of any securities, including any security related to interests in real estate, unless the security is either listed on a national securities exchange or traded through an established over the counter market and the trade occurs in Mr. Melton's own personal accounts.

## VIII. Conclusion

The remedies of disgorgement, civil penalties, and injunctive relief against the defendants are all appropriate. Mr. Melton and his company profited from their securities

fraud, and Mr. Melton is a serial violator of the securities laws. The remedies ensure that he gives up his profits, experiences appropriate punishment by way of civil penalties, and faces the injunctions necessary to discourage further violations.

It is **ORDERED** that the plaintiff's motion for remedies, Doc. 50, is **GRANTED**. A judgment and a permanent injunction will be entered separately.

This the 2nd day of October, 2025.

_____
UNITED STATES DISTRICT JUDGE